**Ebrahima DIALLO, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0910–CR–614.**

Court of Appeals of Indiana.

June 9, 2010.

Andrew J. Borland, Borland & Gaerte, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Majorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Ebrahima Diallo appeals his convictions, after a jury trial, of three counts of class C felony forgery.[1]

We affirm.

---

**1.** Ind.Code § 35–43–5–2(b).

*ISSUE*

Whether sufficient evidence supports Diallo's convictions.

*FACTS*

At all times relevant for our purposes, the City Sports Wear store ("City Sports") was located on the west side of Indianapolis. City Sports' inventory of clothing, accessories, and athletic shoes was largely comprised of counterfeit or "knock-off" merchandise. Manufacturers Nike, Polo Ralph Lauren, and Coogi hired private investigator Steve Bone of Advanced Investigative Services to investigate allegations of trademark infringement against City Sports. In 2007 or early 2008, an associate of Bone's conducted a "covert buy" from City Sports and purchased a pair of "Nike" shoes that were later determined to be counterfeit.

On April 29, 2008, Bone and several colleagues served three [2] cease and desist orders upon City Sports requesting that the store stop selling "knock-off" Nike, Polo Ralph Lauren, and Coogi merchandise. Diallo was running the store at the time. Bone's associate(s) photographed Diallo and photocopied his State-issued driver's license. Bone then explained the cease and decease orders to Diallo, who voluntarily signed [3] them in Bone's presence. Afterwards, Diallo surrendered the following counterfeit items: 157 pairs of "Nike" shoes, 9 single "Nike" shoes, 38 "Polo Ralph Lauren" items, and 210 "Coogi" items. At the time, City Sports displayed no signage that identified any of its merchandise as counterfeit.

Subsequently, Nike asked Bone to determine whether City Sports was in compliance with its cease and desist order. On August 5, 2008, Bone waited outside the store and observed as secret shopper Aerial Hawkey went inside. Inside, Hawkey noted that City Sports displayed no signage that identified any of its merchandise as counterfeit. Seeing no Nike shoes on display, she asked Diallo about purchasing a pair. Diallo showed Hawkey a binder containing photographs of various Nike shoes. Hawkey selected a pair of Nike Air Force Ones. As Bone watched, Diallo "exited the store, entered his van, ... pulled out a box that appeared to be a Nike labeled box ... and [ ] carried the shoe[s] into the store." (Tr. 163). Hawkey paid $55.00 for the shoes and delivered them to Bone, who verified with Nike that the shoes were counterfeit. Bone then gave the counterfeit Nike shoes to Detective Sheryl McGlinsey of the Indianapolis Metropolitan Police Department ("IMPD").

On August 18, 2008, McGlinsey executed a search warrant at City Sports. Bone was also present. McGlinsey and other IMPD officers confiscated the following counterfeit items from the store: 25 single "Nike" shoes; 4 pairs of "Nike" shoes; 27 "Polo Ralph Lauren" items; and 31 "Coogi" items. When interviewed by McGlinsey, Diallo told her that he had knowingly brought the counterfeit merchandise into the store.

On January 13, 2009, the State charged Diallo with three counts of class C felony forgery. The trial court conducted a jury trial on August 26, 2009. The trial judge read the following stipulation to the jury:

> The parties, by counsel, stipulate that the following facts are to be uncontested at trial:
>
> Number 1, the Nike merchandise found at City Sports Wear was counterfeit and not authorized by Nike.

---

2. Bone served a cease and desist letter for each of the involved manufacturers.

3. Diallo signed the letters with the name "Mamadou Diallo." (State's Ex. 29, 30).

Number 2, the Polo Ralph Lauren merchandise found at City Sports Wear was counterfeit and not authorized by Polo Ralph Lauren.

Number 3, the Coogi merchandise found at City Sports Wear was counterfeit and not authorized by Coogi.

(Tr. 148). The trial court also admitted the following evidence presented by the State: (1) photographs of the seized counterfeit merchandise; (2) three cease and desist orders signed by Diallo on April 29, 2008; (3) the photograph of Diallo that was taken at City Sports on April 29, 2008; and (4) the photocopy of his driver's license. In addition, Bone, Hawkey, and Detective McGlinsey testified to the foregoing facts.

Lastly, Diallo testified as follows: that he "never knew [the merchandise was] counterfeit"; that neither Bone or Detective McGlinsey told him that the merchandise was counterfeit; that he never signed the cease and desist orders; and that he never admitted to Bone or Detective McGlinsey that the merchandise was counterfeit. (Tr. 253). At the close of the evidence, the jury found Diallo guilty as charged. On October 2, 2009, the trial court imposed three concurrent three-year sentences, each with two years suspended and one year to be served on home detention, as well as 365 days of probation. He now appeals.

Additional facts will be provided as necessary.

### DECISION

■ Diallo argues that there is insufficient evidence to support his convictions. Although he readily admits that he possessed counterfeit "Nike," "Polo Ralph Lauren" and "Coogi" items that were not authorized by the manufacturers, he argues that the State failed to prove that he acted with intent to defraud.[4]

When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Instead, we will consider only the probative evidence and reasonable inferences that may be drawn therefrom in support of the verdict. *Id.* We will affirm if a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt based on the probative evidence and inferences. *Id.*

We have previously held that "the sale of a t-shirt imprinted with the legal trademark of another may be subject to prosecution under the forgery statute." *Jacobs v. State*, 640 N.E.2d 61, 65 (Ind.Ct.App. 1994). Forgery is committed when a defendant with an intent to defraud, makes,[5] utters,[6] or possesses a written instrument "such that the instrument purported to have been made ... by authority of one who did not give authority." Ind.Code § 35–43–5–2(b)(4).

■ "An intent to defraud involves an intent to deceive and thereby work a reliance and an injury." *Williams v. State*, 892 N.E.2d 666, 671 (Ind.Ct.App.2008) (citing *Wendling v. State*, 465 N.E.2d 169, 170

---

4. Diallo challenges the sufficiency of the State's evidence only with respect to the "intent to defraud" element of the charged offenses.

5. Indiana Code section 35–43–5–1(m) defines "make" as "to draw, prepare, complete, counterfeit, copy, or otherwise reproduce, or alter any written instrument in whole or in part."

6. Indiana Code section 35–41–1–27 defines "utter" as "to issue, authenticate, transfer, publish, deliver, sell, transmit, present, or use."

(Ind.1984)). "[T]here must be a potential benefit to the maker or potential injury to the defrauded party." *Jacobs,* 640 N.E.2d at 65. Because intent is a mental state, the fact-finder often must "resort to the reasonable inferences based upon an examination of the surrounding circumstances to determine" whether—from the person's conduct and the natural consequences therefrom—there is a showing or inference of the requisite criminal intent. *M.Q.M. v. State,* 840 N.E.2d 441, 446 (Ind. Ct.App.2006).

In *Jacobs,* the defendant was arrested for selling unauthorized copies of Guess, Nike, and Polo t-shirts after investigators conducted two covert buys from him. Although the defendant disclosed, during the first covert buy, that the t-shirts were copies, he failed to inform the second buyer/investigator that the t-shirts were not authentic. Nor did he display any signs alerting his customers that the merchandise was not authentic. Defendant was subsequently convicted of three counts of class C felony forgery. On appeal, he challenged the State's proof that he had acted with "intent to defraud." In finding that a reasonable jury could have concluded that the defendant intended to defraud his customers, we found that the defendant (1) knew that the items were not genuine; (2) posted no signage to inform his customers that the merchandise was not authentic; and specifically, (3) failed to disclose the fact that the t-shirts were fake to the second buyer/investigator, which supported the inference that the defendant "intend[ed] for his customers to believe that the t-shirts were real, resulting in a benefit to him from the sale of the shirts and an injury to the customers in that they purchased fake products." 640 N.E.2d at 65.

Here, the record reveals that Diallo presented "knock-off" (counterfeit) merchandise bearing the federally-registered trademarks of Nike, Polo Ralph Lauren, and Coogi for sale at City Sports. Even after he signed the manufacturers' cease and desist orders on April 29, 2008, he continued to sell the "knock-off" merchandise at City Sports as of August 5, 2008, attempting to conceal his wrongdoing by storing the merchandise in his van. At trial, Diallo denied ever admitting to McGlinsey that he had knowingly brought the counterfeit merchandise into the store; however, at trial, he stipulated that the "Nike," "Polo Ralph Lauren," and "Coogi" items that were confiscated from City Sports were counterfeit and had not been authorized by the manufacturers. State witnesses testified that Diallo failed to display signage or to otherwise notify customers that the merchandise at City Sports was not genuine. Bone testified further that the price tags indicated Diallo's intent to sell the "knock-off" merchandise at prices associated with authentic merchandise.

Based upon the foregoing, we find as in *Jacobs* that the State presented sufficient evidence from which a rational jury could conclude that Diallo wanted his customers to believe that his "knock-off" merchandise was genuine, and, thereby, intended to defraud them. His arguments to the contrary merely amount to an invitation that we reweigh the evidence in his favor, which we will not do. *See Drane,* 867 N.E.2d at 146.

Affirmed.[7]

BAKER, C.J., and CRONE, J., concur.

---

**7.** Diallo also argues that the State failed to

present sufficient evidence that he intended to

defraud customers with respect to the Coogi and Polo Ralph Lauren merchandise because "no evidence of sales of Ralph Lauren or Coogi items was presented at all." Diallo's Br. at 9. In rejecting this contention, we observe that the applicable statute provides that a defendant, who with an intent to defraud, makes, utters, or *possesses* a written instrument "such that the instrument purported to have been made ... by authority of one who did not give authority" commits class C felony forgery. I.C. § 35–43–5–2(b)(4). Pursuant to the plain language of the statute, proof of an accompanying sale is not required under the statute. Rather, "mere possession," as Diallo terms it, coupled with intent to defraud will suffice. Diallo's Br. at 9. As noted above, Diallo's intent to defraud his customers can be reasonably inferred from his failure to notify his customers that the Ralph Lauren and Coogi items displayed for sale at City Sports were counterfeit and not authorized by those manufacturers. Thus, we conclude that the State presented sufficient evidence to support Diallo's convictions with respect to "Ralph Lauren" and "Coogi" merchandise.