**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LONNIE D. COVEY, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 90A02-1204-CR-284 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE WELLS CIRCUIT COURT
The Honorable Kenton W. Kiracofe, Judge
Cause No. 90C01-1003-FC-2

**October 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Lonnie Covey appeals his conviction and sentence for forgery as a class C felony.[1]

Covey raises two issues, which we revise and restate as:

I.      Whether the evidence is sufficient to sustain Covey's conviction; and

II.     Whether Covey's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

The relevant facts follow. On December 11, 2009, Covey's father Robert drove Covey to visit Dr. Maria Sumabat for an Oxycontin prescription due to knee pain. Dr. Sumabat advised Covey to decrease his dosage of Oxycontin to 10 mg twice a day "since he had his surgery already and the pain is not that bad," and she prepared a prescription for sixty 10 mg tablets which constituted a thirty-day supply. Transcript at 37. Robert waited in the lobby while Covey was seeing the doctor.

After leaving the doctor's office, Robert drove Covey to a nearby drug store to fill the prescription. They pulled up to a drive-thru lane and presented Pharmacist Mark Toetz with the prescription. Upon examining the prescription, Toetz noticed that the prescription was for 20 mg tablets and that "the ink on the milligram amount Oxycotton [sic] the 20 milligrams was what appeared to be a different ink color than the rest of the prescription." Id. at 41. Toetz called the doctor's office to clarify which strength the doctor had ordered, and afterward he instructed Covey to return to the doctor. Toetz also called the police.

---

[1] Ind. Code § 35-43-5-2(b)(3) (Supp. 2006).

2

Covey returned to the doctor's office and requested that she write another prescription, and the doctor refused, reiterating that her policy was that if a patient loses his prescription she would not rewrite it. Covey eventually obtained another Oxycontin prescription from a different doctor the same day.

On March 18, 2010, the State charged Covey with Count I, forgery as a class C felony; and Count II, obtaining a controlled substance by fraud or deceit as a class D felony. On February 8, 2012, the State filed a motion to dismiss Count II which the court granted the same day. On February 9, 2012, the court held a jury trial in which the State admitted into evidence the prescription form presented to Toetz. Dr. Sumabat testified that the "20" on the prescription was not in her handwriting. Id. at 38. The jury found Covey guilty as charged. On March 19, 2012, the court held a sentencing hearing and sentenced Covey to eight years in the Department of Correction.

I.

The first issue is whether the evidence is sufficient to sustain Covey's conviction for forgery as a class C felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

The offense of forgery provides in relevant part that "[a] person who, with intent to defraud, makes, utters, or possesses a written instrument in such a manner that it

3

purports to have been made: . . . (3) with different provisions; . . . commits forgery, a Class C felony." Ind. Code § 35-43-5-2(b)(3). Thus, to convict Covey of forgery, the State needed to prove beyond a reasonable doubt that: (1) Covey; (2) with intent to defraud; (3) made, uttered, or possessed a written instrument in such a manner that it purported to have been made; (4) with different provisions.

Intent to defraud may be proven by circumstantial evidence which will often include the general conduct of the defendant when presenting the instrument for acceptance. Miller v. State, 693 N.E.2d 602, 604 (Ind. Ct. App. 1998) (citing Wendling v. State, 465 N.E.2d 169, 170 (Ind. 1984)). Also, proof of an injury is not required and intent may be shown by either "a potential benefit to the maker *or* potential injury to the defrauded party." Diallo v. State, 928 N.E.2d 250, 252 (Ind. Ct. App. 2010) (emphasis added).

Covey argues that "[a]ssuming, *arguendo*, the prescription was altered, the record contains no direct evidence establishing Covey altered the prescription," and that although "intent to defraud may be proven by circumstantial evidence, the State also failed to offer sufficient circumstantial evidence proving Covey's guilt beyond a reasonable doubt." Appellant's Brief at 8-9. Covey highlights testimony by Pharmacist Toetz when he testified that "doctors frequently make mistakes when making prescriptions," as well as Dr. Sumabat's testimony that she denied Covey a new prescription due to her policy regarding "refusing to replace a prescription" and not "because the first was altered." Id. at 9. Covey also argues that the State did not present evidence of an "improper drug addiction which might have sparked his intent to defraud."

4

Id. The State argues that "[t]he evidence here points solely to [Covey] as the one who altered the dosage on the prescription," noting that "only [Covey] had the motive to change the prescription so that the prescribed dosage amount was doubled." Appellee's Brief at 5. The State argues that Covey "was use to taking the larger dosage of 20 mg of Oxycontin for his pain" and "[c]utting the dosage in half would have affected only" him. Id. The State also notes that Robert testified that he did nothing to the prescription.

Here, the evidence and reasonable inferences most favorable to the conviction reveal that Covey received a prescription from Dr. Sumabat for sixty 10 mg Oxycontin pills which constituted a thirty-day supply and Covey, prior to presenting the prescription to the pharmacist, changed the dosage amount to 20 mg pills. Dr. Sumabat testified unequivocally that the 20 on the prescription, which Covey presented to Toetz and was entered into evidence, was not her handwriting. Covey's arguments on appeal invite us to reweigh the evidence presented at trial, which we cannot do. See Jordan, 656 N.E.2d at 817. Based upon our review of the evidence as set forth in the record and above, we conclude that sufficient evidence exists from which the jury could find Covey guilty beyond a reasonable doubt of forgery as a class C felony. See Williams v. State, 892 N.E.2d 666, 672 (Ind. Ct. App. 2008) (noting the fact finder did not believe the defendant's testimony, that on appeal we cannot reweigh the evidence, and that the defendant failed to rebut the State's evidence that the defendant intended to defraud when she presented a teller with a forged check, and affirming the defendant's conviction for forgery as a class C felony), trans. denied.

5

## II.

The next issue is whether Covey's sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate.[2] Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

In his brief, Covey argues that "[t]he nature of the offense did not justify such a harsh sentence," noting that he "allegedly committed the offense because he was in pain," that he "previously had been prescribed 20 mg tablets," and that "this offense . . . did not cause substantial harm to innocent third parties." Appellant's Brief at 14. Covey argues that there is no evidence "suggesting the drugs were not for Covey's personal consumption" and also he "did not obtain the benefit of any forgery" because he never received the pills from the prescription." Id. Covey also argues that although he "admittedly has a lengthy criminal history," he has previously "used his time in prison

---

[2] We observe that Covey also argues that the trial court abused its discretion in sentencing him in failing to identify several mitigating factors that were supported by the record. However, we need not address this issue because we elect to exercise our option to review Covey's sentence under Ind. Appellate Rule 7(B). See Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (holding that where the court on appeal finds that a trial court abused its discretion in sentencing the defendant, the court may either remand for resentencing or exercise the appellate court's authority to review the sentence under Ind. Appellate Rule 7(B)), reh'g denied. To the extent that Covey argues that the court failed to consider Covey's poor health and the undue hardship which Covey's parents would suffer from his incarceration as mitigators, though, we observe that a sentencing court is not obligated to find a circumstance to be mitigating merely because it is advanced as such by the defendant, nor is it required to explain why it chose not to make a finding of mitigation. See Felder v. State, 870 N.E.2d 554, 558 (Ind. Ct. App. 2007). We also note that the court at sentencing observed that it was "sympathetic to the fact that [Covey's] parents are elderly [and] that [he] care[s] for them." Sentencing Transcript at 31.

productively by earning both an Associate's degree and a Bachelor's degree from Ball State University" and also "the presentence investigation report places Covey only in the 'MODERATE risk category to reoffend.'" Id. at 14-15. Covey requests that we "impose a lesser sentence with all or part to be served on home detention." Id. at 16. The State highlights Covey's number of prior convictions, the nature of those offenses, the "near constancy" of such convictions, and also that he "has violated probation and parole in the past and was still on parole for two felonies when the present forgery was committed." Appellee's Brief at 10-11.

Our review of the nature of the offense reveals that Covey altered the Oxycontin dosage amount prescribed by a doctor from 10 to 20 mg and attempted to fill the prescription at a nearby Walgreens drug store. Our review of the character of the offender reveals that Covey has an extensive criminal history. As a juvenile, in 1973, at the age of eleven, Covey was arrested for theft and was reprimanded and released. In 1976, he was convicted of breaking and entering and was placed on probation for six months. In 1979, he was arrested for glue sniffing and was reprimanded and released. In 1980, Covey was convicted of conversion and was sentenced to six months probation.

Later that same year, Covey was convicted of theft as an adult and was sentenced to serve one year at the Indiana State Farm with ninety days suspended. In 1981, he was sentenced to five years with three years suspended for burglary as a class C felony. In 1987, Covey pled guilty to possession of marijuana as a class A misdemeanor and was sentenced to one year in the Huntington County Jail with all but six days suspended and was ordered to complete counseling. In 1989, Covey pled guilty to operating without

financial responsibility and was ordered to surrender his driver's license. In 1991, he pled guilty to failure to prove financial responsibility as a class C misdemeanor. That same year, Covey pled guilty to dealing in marijuana as a class D felony and was sentenced to serve one and one-half years. Also in 1991, Covey pled guilty to public intoxication as a class B misdemeanor and was sentenced to 180 days to be served consecutively to the sentence for the dealing in marijuana conviction, and charges of possession of marijuana, criminal mischief, and possession of paraphernalia were in return dismissed. In 1992, he pled guilty to attempted theft and was sentenced to one and one-half years to be served consecutively to the sentence for the dealing in marijuana and public intoxication convictions, and in return a charge of criminal mischief was dismissed.

In 2000, Covey pled guilty to theft as a class D felony and was sentenced to one-and-one-half years suspended to home detention and probation. In November 2001, he admitted to violating his probation and was sentenced to an additional thirty days of home detention. On July 30, 2002, Covey was charged with theft as a class D felony and possession of a Schedule I, II, III, or IV controlled substance as a class D felony. As a result, another probation violation report was filed on his previous theft charge which he admitted, and he was ordered to serve ninety days in the Wells County Jail. Covey pled guilty to the 2002 theft charge and was sentenced to three years suspended to probation, and the possession charge was dismissed. After committing the 2002 theft but prior to pleading guilty, on August 28, 2002, Covey was charged with causing death when operating a motor vehicle while intoxicated as a class C felony, causing serious bodily

injury when operating a motor vehicle while intoxicated, and being an habitual substance offender.[3] He was sentenced to an aggregate term of sixteen years in the Department of Correction and was released to parole on March 18, 2008. Covey was still on parole from these convictions at the time he committed the instant offense. Finally, Covey also had a number of charges which were dismissed.

Thus, our review of the record reveals that Covey has demonstrated a serious disrespect for the law. In particular, we note that he has been given multiple chances at serving sentences on home detention only to violate his probation. Accordingly, and after due consideration, we conclude that Covey has not sustained his burden of establishing that his sentence of eight years is inappropriate in light of the nature of the offense and his character.

For the foregoing reasons, we affirm Covey's conviction and sentence for forgery as a class C felony.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.

---

[3] At sentencing, Covey indicated to the court that the incident involved his driving a vehicle while using Oxycontin pursuant to a prescription.