## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Feb 26 2015, 9:14 am
CLERK
of the supreme court, court of appeals and tax court

---

ATTORNEY FOR APPELLANT

Ellen F. Hurley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

D'Andre Driver,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 26, 2015

Court of Appeals Cause No.
49A02-1407-CR-487

Appeal from the Marion Superior Court.

The Honorable Christina Klineman, Judge Pro Tempore.

Cause No. 49G05-1312-FC-78966

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, D'Andre Driver (Driver), appeals his conviction for forgery, a Class C felony, Ind. Code § 35-43-5-2(b)(4) (2013); and theft, a Class D felony, I.C. § 35-43-4-2(a).

[2] We affirm.

## ISSUE

[3] Driver raises one issues on appeal which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to sustain Driver's conviction.

## FACTS AND PROCEDURAL HISTORY

[4] On December 11, 2013, Driver, Antwaine Batemon (Batemon), Stephen Wilbert (Wilbert) and Ryan Mahone (Mahone), all drove together to the Target store located on 6101 North Keystone Avenue, Indianapolis, Indiana. David Casiano (Casiano), Target's senior assets protection specialist, saw Driver and Batemon enter the electronics department. The store had been recently experiencing theft of high-priced items. When he watched Driver and Batemon place an Xbox 360, Beats by Dre Headphones, a Lego toy set, and a TV in their cart, it roused Casiano's suspicion, causing him to leave his monitoring desk and proceed to the storeroom floor. Casiano watched Driver and Batemon from a short distance. He saw Driver and Batemon proceed to a register

operated by Jane Carver (Carver). He also observed Driver and Batemon unload the items from the cart. Driver had some cash in his hand, and Casiano observed Driver pull more money from his wallet. Batemon, too, pulled money from his wallet, handed it to Driver, and Driver handed $960.00 to Carver. Once Carver received the money, she placed nine $100 bills into the portion of the drawer where large bills are placed and in turn issued a receipt to Driver.

[5] As Driver and Batemon walked out of the store, Casiano approached Carver and asked her to open the register so that he could examine the money used by Driver. Casiano retrieved nine $100 bills and upon inspecting the bills, he suspected that they were counterfeit. Casiano called the police. While on the phone with the police, Casiano saw Wilbert and Mahone approached Carver's register. Wilbert placed the merchandise on the register, while Mahone walked out of the store. After Carver was done scanning all items, totaling about $400, Wilbert interrupted the transaction by dashing out of the store. The surveillance camera showed Wilbert meeting Mahone near the silver Pontiac Grand Prix they all rode in, where there was some type of "hand to hand exchange" before Wilbert reentered the store and paid for his merchandise. (Tr. p. 49). When Wilbert left the register, Casiano approached Carver and asked Carver to take out the money Wilbert had given her for the purchase.

[6] Moments later, Officer Curt Collins (Officer Collins) of the Indianapolis Metropolitan Police Department, arrived at the Target parking lot and located the silver Pontiac Grand Prix. Officer Collins detained Driver, Batemon, and Mahone, and he also arrested Wilbert who was exiting the store with a cart full

of merchandise. The officer marched all four men to the loss prevention office for questioning. Casiano reported that all four had purchased merchandise with counterfeit money. Officer Collins examined all thirteen bills received by Target from both transactions and he contacted the United States Secret Service. While awaiting the Secret Service, Officer Collins questioned Casiano and Carver. When Special Agent Darren Brock (Special Agent Brock) arrived at the store, Officer Collins conducted a body search on all four men and found more $100 bills: one on Driver, one on Batemon, and two on Wilbert, rounding the total number of bills to seventeen. After carefully scrutinizing all seventeen bills, Special Agent Brock came to the conclusion that they were counterfeit because there was a small flaw on the Franklin portrait, the bills did not have "color-shifting ink," and the texture of the bills was "a little bit off." (Tr. p. 142).

[7] On December 16, 2013, the State filed an Information charging Driver with Count I, forgery, a Class C felony, Count II, theft, a Class D felony, and Count III, counterfeiting, a Class D felony.[1] On April 15, 2014, Driver waived his right to a jury trial and a bench trial was conducted on May 29, 2014. At the close of the evidence, the trial court found Driver guilty as charged. At the

---

[1] Batemon, Wilbert, and Mahone were charged as co-defendants but are not parties to this appeal.

sentencing hearing, on June 18, 2014, the trial court merged Count III into Count I. The trial court then sentenced Driver to concurrent sentences of four years with two years executed on home detention on Count I, and to 545 days on home detention on Count II.

[8] Driver now appeals. Additional information will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[9] Driver claims that there is insufficient evidence to sustain his conviction for forgery and theft. Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. *Perrey v. State*, 824 N.E.2d 372, 373 (Ind. Ct. App. 2005), *trans. denied*. We only consider the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *Id*. Where there is substantial evidence of probative value to support the judgment, it will not be set aside. *Id*.

[10] To convict Driver of forgery, a Class C felony, the State was required to prove beyond a reasonable doubt that Driver, with the intent to defraud, made, uttered, or possessed a written instrument in such a manner that it purports to have been made (1) by another person (2) at another time (3) with different provisions, or (4) by authority of one who did not give authority. *See* I.C. § 35-43-5-2(b)(4).

[11] We have previously held that an intent to defraud involves an intent to deceive and thereby work a reliance and an injury. *Diallo v. State*, 928 N.E.2d 250, 252-

53 (Ind. Ct. App. 2010). There must be a potential benefit to the maker or potential injury to the defrauded party. *Id*. Because intent is a mental state, the fact-finder often must resort to the reasonable inferences based upon an examination of the surrounding circumstance to determine whether—from the person's conduct and the natural consequences therefrom—there is a showing or inference of the requisite criminal intent. *Id*.

[12] Driver maintains that he had no intent to defraud. Specifically, Driver argues he first came into possession of the $100 bills as part of his winnings in a dice game the evening before he shopped at Target; thus, he had no knowledge that the money was counterfeit. During trial, Special Agent Brock testified that the $100 bills recovered from Driver and his friends were counterfeit based on the fact that there was a small flaw on the Franklin portrait, and that the bills were not of the same texture and color as genuine bills.

[13] As noted in the foregoing, intent to defraud may be proven by circumstantial evidence and will often include the general conduct of the defendant when presenting the instrument for acceptance. *See Miller v. State*, 693 N.E.2d 602, 604 (Ind. Ct. App. 1998). Here, on December 11, 2013, Driver went to the Target store and, *in less than ten minutes*, filled his cart with an Xbox 360, Beats by Dre Headphones, a Lego toy set, and a TV, and he proceeded to the checkout lane. Driver then issued nine counterfeit $100 bills to procure the electronics. During trial, Driver admitted that he had handled fake money "more than ten" times. (Tr. p. 200). Based on his admission, the trial court

was free to infer that Driver knew the distinct character of a $100 bill, and that he intended to defraud Target of its merchandise.

[14] In addition, we take note of Special Agent Brock's testimony that Driver's conduct and that of his co-defendants was akin with that of most counterfeiters, in that they used the same register. Special Agent Brock explained that most counterfeiters would not venture going to another register and risk exposure, especially if the initial cashier was unable to discern genuine bills from forged bills. The record shows that after Driver and Batemon paid for the items, Carver did not detect the money as being counterfeit. Shortly thereafter, Mahone and Wilbert approached the same register and purchased goods worth $400 with counterfeit money.

[15] With the above in mind, we find that Driver had the specific intent to defraud Target of its merchandise when he presented counterfeit money, and we hold that the State presented sufficient evidence for the trial court to conclude beyond a reasonable doubt that Driver committed the crime of forgery

[16] Turning to Driver's theft conviction, we note that in order to obtain a conviction of theft in this case, the State must have established beyond a reasonable doubt that (1) Driver (2) knowingly or intentionally (3) exerted unauthorized control over property (4) of Target (5) with the intent to deprive Target of any part of its value or use. *See* I. C. § 35-43-4-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). "A person

engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so."  I.C. § 35-41-2-2(a).  To "exert control over property" means to "obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property."  I.C. § 35-43-4-1(a).  A person's control over the property of another person is "unauthorized" if it is exerted without the other person's consent.  *See* I.C. § 35-43-4-l(b)(l).

[17]   In proving that Driver committed theft, the State presented the following evidence:  On December 11, 2013, Driver went to the Target store, and with the assistance of Batemon, he hand-picked an Xbox 360, Beats by Dre Headphones, a Lego toy set, and a TV.  Driver then proceeded to the checkout lane and presented nine $100 bills under the guise that they were genuine.  An unsuspecting Carver issued Driver with a receipt, and Driver walked out of the store with the items.

[18]   We find that this evidence was sufficient to show that Driver knowingly or intentionally exerted unauthorized control over Target's merchandise without its consent, thus satisfying the statutory requirements for theft.

## CONCLUSION

[19]   Based on the foregoing, we conclude that the State presented sufficient evidence to support Driver's conviction for forgery and theft.

[20]   Affirmed.

[21]   Vaidik, C. J. and Baker, J. concur