## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 31 2015, 9:38 am

*Kevin S. Smith*

**CLERK**
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shamus L. Patton, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 31, 2015 <br><br> Court of Appeals Case No. 49A04-1406-CR-277 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Grant W. Hawkins, Judge <br><br> Cause No. 49G05-1306-FC-42038 <br>        49G05-1007-FB-56351 |

**Pyle, Judge**

# Statement of the Case

Appellant/Defendant Shamus Patton ("Patton") appeals his convictions for six counts of Class C felony forgery.[1] On appeal, he claims that insufficient evidence supports his convictions because the documents at issue are not included in the definition of a "written instrument," which is an element of the offense, and because the State failed to show that Patton acted with an intent to defraud. Concluding that the definition of the term "written instrument" is sufficiently broad so as to include the documents at issue and that the State presented sufficient evidence to prove an intent to defraud, we affirm Patton's convictions.

We affirm.

# Issue

Whether sufficient evidence supports Patton's convictions.

# Facts

On February 15, 2013, Patton was a resident of Brandon Hall—a work release facility in Indianapolis—as a result of convictions for Class C felony battery, Class C felony criminal recklessness, Class D felony criminal gang activity, and misdemeanor carrying a handgun without a license. Sunder Nix ("Nix"), a

---

[1] IND. CODE § 35-43-5-2(b). We note that, effective July 1, 2014, a new version of this forgery statute was enacted and that Class C felony forgery is now a Level 6 felony. Because Patton committed his crimes in 2013, we will apply the statute in effect at that time.

case worker at Brandon Hall, reviewed with Patton the conditions of placement in Brandon Hall and the potential consequences violating of these conditions. In relevant part, Patton agreed to the following:

GENERAL RULES

* * * * *

9. You or anyone contacting Brandon Hall on your behalf shall be truthful and honest with your Case Manager, correctional staff, and Brandon Hall staff at all times. Any documentation submitted to your Case Manager that appears forged or fraudulent will result in a Notice of Violation being filed with the Court or the Department of Correction and the documents will be forwarded to the Marion County Prosecutor for criminal prosecution as necessary.

* * * * *

PASSES TO LEAVE THE FACILITY

22. You may not leave the Brandon Hall for any reason unless you have an approved pass from your Case Manager or appropriate Brandon Hall staff.

23. When given a pass to leave the facility, you shall only go to locations approved in advance. YOU MAY NOT GO TO ANY LOCATION UNLESS SPECIFICALLY AUTHORIZED IN ADVANCE. It is a violation of this rule to visit an unauthorized location while traveling to or from your employer or other approved location.

24. You are to return directly to the Brandon Hall as soon as the purpose of your pass is complete. This applies when work shifts are cancelled or end early. This also applies when a location you were authorized to visit is closed or a person you were to meet is unable to see you.

25. You are required to provide written verification of all activities that require you to be away from the Brandon Hall. Written verification means proof of the location of the activity, the time of arrival, and time of departure. You are required to get written statements to verify counseling/treatment appointments, doctor's appointments, and attendance at outside meetings. You are required to get written verification of your having made application for employment if on a pass to find work.

(State's Ex. 2A at 17). Patton initialed and signed the contract acknowledging that he understood the conditions and agreed to abide by them.

[5] In June 2013, Patton received multiple passes out of Brandon Hall to seek employment. On June 10, 2013, Patton submitted employer contact sheets[2] from EZ Pawn, Super 8, and Holiday Inn. On June 11, Brandon Hall gave Patton a pass to seek employment, and he returned with employer contact sheets from Kentucky Fried Chicken, McAlister's Deli, and Mr. Gyro. On June 17, 2013, Patton received another pass from Brandon Hall to seek work, and he submitted employer contact sheets from O'Charley's, Pizza Hut, and Burger King. The next day, after receiving another pass, Patton submitted employer contact sheets from Dollar Tree, King's Ribs, and CVS.

[6] Sergeant Joshua Barker ("Sgt. Barker") with the Indianapolis Metropolitan Police Department ("IMPD") began an investigation into Patton's employer

---

[2] According to Nix, residents of Brandon Hall complete a contact sheet with information about the location visited and a telephone number. Residents then must have a manager or assistant manager of the business sign the sheet verifying a resident's presence.

contact sheets. Sgt. Barker examined the documents and suspected that some of the signatures verifying Patton's contact with the businesses were fraudulent. Sgt. Barker selected six locations and went to those businesses to verify the information. At each location, Sgt. Barker spoke with a manager who later confirmed that the purported signatures were fake. Sgt. Barker then prepared a probable cause affidavit for forgery charges.

[7] On June 27, 2013, the State charged Patton with six counts of Class C felony forgery. A jury trial was held on May 8, 2014, and the jury found Patton guilty as charged. Patton now appeals.

## Decision

[8] On appeal, Patton claims that there was insufficient evidence to support his forgery convictions, claiming that the employer contact sheets at issue do not fit the definition of a "written instrument," which is an element of the offense. He also argues that the State failed to show his intent to defraud.

[9] When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The

> evidence is sufficient if an inference may reasonably be drawn
> from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks, citations, and footnote omitted) (emphasis in original).

[10] To convict Patton as charged, the State was required to show that Patton, with the intent to defraud, made, possessed, or uttered a written instrument to Brandon Hall in such a manner that the written instrument was purported to have been made by another person. IND. CODE § 35-43-5-2(b). INDIANA CODE § 35-43-5-1(t) defines "written instrument" as "a paper, document, or other instrument containing written matter and *includes* money, coins, tokens, stamps, seals, credit cards, badges, trademarks, medals, retail sales receipts, labels or markings (including universal product code (UPC) or another product identification code), or other objects or symbols of value, right, privilege, or identification." (emphasis added).

[11] We note that although Patton frames his entire argument as a challenge to the sufficiency of the evidence, the question of whether his employer contact sheets fall under the definition of a "written instrument" is a question of statutory construction.

[12] > Our primary goal in interpreting statutes is to determine and give
> effect to the Legislature's intent. *State v. Oddi-Smith*, 878 N.E.2d
> 1245 (Ind. 2008). The best evidence of that intent is a statute's
> text. *Id*. The first step therefore is to decide whether the
> Legislature has spoken clearly and unambiguously on the point
> in question. *Sloan* [*v. State*], 947 N.E.2d [917] at 922 [(Ind.
> 2011)]. When a statute is clear and unambiguous, we must apply

> the plain and ordinary meaning of the language. *Id*. There is no
> need to resort to any other rules of statutory construction.

*Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012).

[13] The clear and unambiguous language of the statue defining a "written instrument" is broad and inclusive. Indeed, Patton acknowledges this much in citing *Lahr v. State*, 731 N.E.2d 479 (Ind. Ct. App. 2000), where Lahr was convicted of forging a letter that his attorney filed with the court in a notice of supplemental discovery compliance. Accordingly, the employer contact sheets at issue here were documents and fell within the definition of "written instruments." *See, e.g.*, *Jacobs v. State*, 640 N.E.2d 61, 65 (Ind. Ct. App. 1994) (concluding that the legislature "intended to broaden the traditional concept of the crime of forgery with the new statute."), *reh'g denied, trans. denied*.

[14] Turning to Patton's argument that the State failed to prove his intent to defraud, we note that an intent to defraud includes a showing of "a potential benefit to the maker or potential injury to the defrauded party." *Eifler v. State*, 570 N.E.2d 70, 77 (Ind. Ct. App. 1994). "[I]ntent to defraud may be proven by circumstantial evidence." *McHenry v. State*, 820 N.E.2d 124, 127 (Ind. 2005). Because intent is a mental state, the fact-finder often must "resort to the reasonable inferences based upon an examination of the surrounding circumstance[s] to determine" whether, from the person's conduct and the natural consequences therefrom, there is a showing or inference of the requisite criminal intent. *Diallo v. State*, 928 N.E.2d 250, 252-53 (Ind. Ct. App. 2010).

At trial and on appeal, the State argues that Patton's potential benefit was his ability to leave the facility. Patton, in his brief, responds that he "got to leave [Brandon Hall] regardless of whether his excursions resulted in applications being submitted or he gained employment. The signatures affixed after he left did not result in him being able to leave Brandon Hall." (Patton's Br. 13). However, Patton's contract clearly states that he was not allowed to leave Brandon Hall unless he had an approved pass. The jury could reasonably infer that, by submitting employer contact sheets with fraudulent signatures, Patton intended to deceive staff at Brandon Hall about his activities while on leave from the facility in order to keep receiving passes. Accordingly, sufficient evidence established Patton's intent to defraud, and we affirm his convictions.

Affirmed.

Barnes, J., and May, J., concur.