## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 29 2016, 8:21 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Ellen F. Hurley<br>Marion County Public Defender Agency<br>Indianapolis, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Ian McLean<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hubert Charles,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 29, 2016<br><br>Court of Appeals Case No.<br>49A02-1507-CR-730<br><br>Appeal from the Marion Superior Court.<br>The Honorable Stanley E. Kroh, Magistrate.<br>Cause No. 49G03-1410-F3-46189 |

**Darden, Senior Judge**

## Statement of the Case

[1] Hubert Charles attacked a visitor to his apartment and took her prescription glasses. He appeals his conviction of theft, a Class A misdemeanor. Ind. Code § 35-43-4-2 (2014). We affirm.

## Issue

Charles raises one issue, which we restate as: whether there is sufficient evidence to support his theft conviction.

## Facts and Procedural History

Jessica Cartwright and Charles met online. They became friends over the next several months, communicating at least every other day. They also met in person at Charles' apartment on one occasion.

On July 21, 2014, Charles told Cartwright that his request for unemployment benefits had been approved and he expected to receive back pay. Cartwright said that her request for unemployment benefits had not yet been approved and she did not have money for groceries. Charles said that he would give her money and invited her to his apartment.

When Cartwright arrived at Charles' apartment, he "seemed kind of off" and was moving around the apartment. *Id.* at 16. Charles twice offered Cartwright an alcoholic drink, but she declined. Next, he said the money was in his bedroom and asked her to go there with him. Cartwright suggested that Charles go get the money by himself, but he insisted that she accompany him to the bedroom.

When they entered the bedroom, Cartwright sat on the bed, and Charles asked if she wanted to "mess around." *Id.* at 18. She said no. He became frustrated and seemed "disoriented." *Id.* Cartwright told Charles not to worry about

giving her any money, she would just leave. He said the money was not a problem.

[7] Next, Cartwright told Charles she needed to use his bathroom. He walked her to his bathroom and stood in front of the open doorway. When Cartwright tried to close the door, Charles stopped her. After further discussion, she convinced him to let her close the door. While she was in the bathroom, he repeatedly opened the door and looked inside.

[8] After Cartwright was finished in the bathroom, she told Charles she needed to leave. He said that he would get her money and invited her to return to his bedroom. Cartwright returned to the bedroom, and Charles closed the door and went to his closet. Next, he approached her, took her prescription glasses off of her face without her permission, and placed the glasses in his pocket. Charles then hit Cartwright on the head with a liquor bottle. As she raised her hands to protect her head, he hit her in the torso twice with his hand. Charles asked her, "Why are you doing this, why are you doing this to me?" *Id.* at 22.

[9] Cartwright tried to calm Charles down and asked him to sit on the bed. They both sat down, and he was "kind of babbling." *Id.* at 23. Charles stood up, leaned over Cartwright, and tried to pull her pants down. She resisted, and he attempted to hit her again. When Charles stopped trying to pull Cartwright's pants down, she stood up and tried to leave the bedroom. He got up and tried to hold the bedroom door closed, but she put her foot in the doorway and struggled with him. Charles shoved Cartwright into a wall, but he also

stumbled back, and she took the opportunity to leave the bedroom and flee from the apartment.

[10] Cartwright got into her car, drove around the corner, and called the police. Several officers arrived and spoke with her. One of them went to Charles' apartment, but no one responded when the officer knocked on the door. Cartwright declined an ambulance and later drove herself to the hospital.

[11] That evening, Charles sent Cartwright a series of texts accusing her of being a liar, a thief, and a prostitute. Charles stopped texting her only after she told him the police were monitoring her phone.

[12] On July 29, 2014, Cartwright spoke with a detective about the incident, and she mentioned that Charles took her prescription glasses. The next day, at the direction of the detective, Cartwright texted Charles to ask him to return her glasses. He said he would give them to her if she returned to his apartment. The detective obtained a search warrant for Charles' apartment and executed the warrant with a team of officers. No one responded when the officers knocked on Charles' front door. The officers forced the door open, found Charles in the apartment, and handcuffed him. He had Cartwright's glasses in his pocket.

[13] The State charged Charles with attempted rape, a Level 3 felony; criminal confinement resulting in bodily injury, a Level 5 felony; battery resulting in bodily injury, a Class A misdemeanor; and theft, a Class A misdemeanor. The State later dismissed the attempted rape charge. The parties agreed to a bench

trial. The court determined that Charles was guilty of the three remaining charges and imposed a sentence. This appeal followed.

# Discussion and Decision

[14] Charles claims there is insufficient evidence to support the theft conviction. When we review the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Buelna v. State*, 20 N.E.3d 137, 141 (Ind. 2014). We consider conflicting evidence most favorably to the trial court's judgment. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005). We neither reweigh the evidence nor assess witness credibility. *Buelna*, 20 N.E.3d at 141. We will affirm the conviction unless no reasonable factfinder could conclude the elements of the crime were proven beyond a reasonable doubt. *Id.*

[15] In order to convict Charles of theft as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that Charles (1) knowingly or intentionally (2) exerted unauthorized control (3) over Cartwright's glasses (4) with intent to deprive Cartwright of any part of the glasses' value or use. Ind. Code § 35-43-4-2. Indiana's theft statute does not require the State to prove that the defendant intended to permanently deprive the victim of the use of the property. *Bennett v. State*, 878 N.E.2d 836, 836 (Ind. 2008). Because intent is a mental state, the fact-finder often must resort to reasonable inferences from the surrounding circumstances, including the defendant's conduct, to determine

whether there is a showing of the requisite criminal intent. *Diallo v. State*, 928 N.E.2d 250, 253 (Ind. Ct. App. 2010).

[16] Charles removed Cartwright's prescription eyeglasses from her face and put them in his pocket immediately before he attacked her. He did not have Cartwright's permission to take her glasses. Charles kept the glasses after Cartwright fled from the apartment, and she did not get her glasses back until two weeks later, when the police took Charles into custody and found the glasses in his pocket.

[17] Charles argues that he intended to give Cartwright's glasses back but lacked an opportunity. In support of his argument, he notes that when Cartwright texted him two weeks after the attack to ask for her glasses, he said he would give them back if she returned to his apartment. This argument is a request to reweigh the evidence. A finder of fact could reasonably infer from Charles' unauthorized removal of Cartwright's glasses from her person that he intended to deprive her of the use of the glasses for a period of time. After Charles hindered Cartwright's vision, he immediately attacked her and caused her to flee the apartment for her own safety. Charles repeatedly texted Cartwright that night, but he never offered to return the glasses. Although Charles later offered to return the glasses, he required Cartwright to return to his apartment. A finder of fact could reasonably infer, in light of Charles' prior attack on Cartwright, that his offer was not genuine and was merely a ruse intended to again lure her into a vulnerable position. The evidence is sufficient to support Charles' conviction of theft.

# Conclusion

[18] For the foregoing reasons, we affirm the judgment of the trial court.

[19] Affirmed.

Vaidik, C.J., and Bailey, J., concur.