## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 20 2016, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lawrence M. Hansen
Hansen Law Firm, LLC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bruce McIntyre,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 20, 2016

Court of Appeals Case No.
29A02-1509-CR-1604

Appeal from the
Hamilton Circuit Court

The Honorable
Paul A. Felix, Judge

Trial Court Cause No.
29C01-1411-FC-9105

**Kirsch, Judge.**

[1] Following a jury trial, Bruce McIntyre was convicted of Class C felony forgery,[1] and he now appeals, asserting that the State failed to present sufficient evidence to convict him.

[2] We affirm.

## Facts and Procedural History

[3] Irving Paul ("Paul") is a "mostly retired" Indiana businessman. *Tr*. at 110. However, in his retirement, Paul, along with some partners, started a consulting business called Paul & Associates Consultants several years ago. Paul & Associates, among other things, is involved in business development opportunities, by investing in new or expanding businesses. Sometime after forming Paul & Associates, Paul met McIntyre through a mutual friend. At that time, McIntyre was a partner of, or employed by, a company called The Dane Group ("The Dane Group"), which was involved in real estate development and provided "short-term financing for companies that were either new or trying to grow." *Id*. at 111. Paul engaged in "five different deals" with McIntyre. *Id*. In the course of their relationship, the pattern of the transactions generally was that McIntyre would present Paul with the available investment opportunities, Paul would provide some amount of funds to The Dane Group, and, thereafter, Paul would receive the agreed-upon return on investment.

---

[1] *See* Ind. Code § 35-43-5-2(b)(4). We note that this statute was amended effective July 1, 2014; however, we will apply the statute in effect at the time that McIntyre committed his offense.

On February 2, 2014, Paul received an email from McIntyre, in which McIntyre inquired if Paul was interested in investing in a "great opportunity" to help fund the expansion efforts of a new company called Indian Coffee Company, located in Bartlesville, Oklahoma. *State's Ex*. 2. Indian Coffee Company at that time only served breakfast and lunch, but the email represented that "Indian Coffee is expanding" and "will also be opening" an evening meal dinner service. *Id*. "The funds will be used to purchase new equipment," "perform . . . improvements," as well as "construction . . . to extend current seating." *Id*. McIntyre asked Paul if he would be interested in investing $57,300.00 with a ten percent rate of return in a 150-day term. McIntyre concluded the email with: "Let me know if you're interested and I will have the note drafted and signed for you." *Id*.

Based on the representations in the email, Paul agreed to loan $50,000.00 in exchange for the agreement that he would receive $55,000.00 by July 3, 2014, and, later that week, Paul dropped off a check at the offices of The Dane Group in the amount of $50,000.00. The Dane Group deposited the check, and the $50,000.00 in funds were thereafter sent to and received by Indian Coffee Company, which was owned in equal percentages by one of McIntyre's business partners at The Dane Group and by a Bartlesville man named Mark Spencer ("Spencer").

On February 18, 2014, McIntyre sent Paul an email that attached a Promissory Note ("Note"), dated February 3, 2014, relative to the Indian Coffee Company investment transaction. *State's Ex*. 3. McIntyre signed the Note as "Borrower"

and the Note reflected that Spencer signed it as "Personal Guarantor." *State's Ex*. 1. McIntyre notarized the Note, which affirmed that Spencer appeared before him, "acknowledged the execution of the foregoing" Note, and "stated that any representations therein are true." *Appellant's App*. at 106. Like the Note, the notarization was dated February 3, 2014. McIntyre told Paul in his February 18 email, "I dropped the signed original in the mail to you this morning[,]" and Paul received it at his home in the mail shortly thereafter. *State's Ex*. 3.

[7] The Note reflected that payment of $55,000.00 was due on July 3, 2014, but by that date, Paul had received no payment on the loan. Therefore, he sent an email concerning default on the Note to the following people: McIntyre; one of McIntyre's partners at The Dane Group named Shelly Guzman; and Spencer, whose name appeared as "Guarantor" on the Note. *State's Ex*. 1. McIntyre responded to Paul, stating that he had been in the hospital and that he "would be working on paying it[.]" *Tr*. at 119. Paul received a partial payment from The Dane Group on July 9, another on July 10, and a third on July 25. On July 31, McIntyre met with Paul in person, and McIntyre told Paul, "[I] made a mistake," explaining that "the guarantor on the [N]ote was not Mark Spencer." *Id*. at 120. McIntyre told Paul that there was a personal guarantor, although McIntyre "did not share the name of that person" with Paul. *Id*. Thereafter, on August 6, McIntyre received a fourth partial payment from The Dane Group. On August 15, 2014, because money was still due and owing, Paul attempted to reach McIntyre by text message, but received a reply that McIntyre's

"employment had been terminated" and that McIntyre "was no longer with The Dane Group." *Id*. at 121.

[8] On August 19, Paul met with McIntyre, and McIntyre promised "that he would personally take care of the money that was due" to Paul & Associates. *Id*. Paul received no further payment on the amount owed, and he thereafter filed a civil lawsuit on the Note against The Dane Group, McIntyre, and Spencer. Paul's counsel received a letter from McIntyre, suggesting that he would/could provide another note with collateral for amounts owing, and he stated that Spencer was not in any way involved in the original Note of February 3, 2014. *State's Ex*. 4.

[9] The State charged McIntyre with one count of Class C felony forgery, alleging that, on or about February 3, 2014, McIntyre with intent to defraud "did utter a written instrument," namely a promissory note, "in such a manner that it purports to have been made by authority of one who did not give authority, to-wit: Mark Spencer[.]" *Appellant's App*. at 102.

[10] At the ensuing jury trial, Paul testified that he received a total of $35,889.55 in payments during July and August 2014, but he was still owed approximately $20,000.00, plus interest on the Note. Paul stated that he "absolutely" relied on the existence of a guarantor on the Note when entering into the transaction. *Tr*. at 125. When Paul was asked if the other "deals" in which he had engaged

with The Dane Group included a guarantor, Paul replied, "They did." [2] *Id.* at 134.

[11] Spencer, an Oklahoma businessman, also testified at trial. At all relevant times, Spencer lived in Bartlesville, Oklahoma, and he met McIntyre, through an acquaintance, in the summer of 2012 when McIntyre was in Bartlesville, investigating real estate business investment opportunities. In partnership with The Dane Group, Spencer opened Indian Coffee Company in July 2013. Spencer testified that on July 7, 2014, he received the email from Paul about the unpaid Note, but that at that time he did not know, and had never heard of, Paul. He, therefore, attempted to contact McIntyre "to find out what was going on," but was unable to reach him, so he spoke to Guzman, who told Spencer that the situation "was just a mistake." *Tr.* at 144. Spencer later reached McIntyre, who told Spencer that he "would fix it[.]" *Id.* Spencer explained that, in early 2014, he had contacted McIntyre regarding the issue of a need for additional funding, but that until he received Paul's email in July 2014, he had no knowledge of the Note, Paul, or the fact that Paul loaned $50,000.00. Spencer stated that while Indian Coffee Company did receive a sum of $50,000.00 from The Dane Group, most of that money was used for daily operating expenses, and only an estimated 25% was used for expansion. He stated that, although his name appeared on the Note, he did not sign it, and,

---

[2] Paul testified that he received full payment on "three of the five" investment transactions in which he loaned money to The Dane Group. *Tr.* at 134.

contrary to what the notarization reflected, he had never been in Indiana until the day prior to trial.

[12] McIntyre's defense at trial was that it was "error" that Spencer's name appeared on the Note as a guarantor, and, consequently, McIntyre had no intent to defraud Paul. *Appellant's Br*. at 10. McIntyre further claimed that Paul did not rely on the Note when loaning the money. The State maintained that there was no evidence to support the suggestion that Spencer's name on the Note was simply a mistake and, the State argued, the testimony showed that Paul relied on the Note when he loaned the money. The jury convicted McIntyre as charged. After reviewing McIntyre's criminal history, which included two adult felonies – one Class C felony conviction for corrupt business influence and one federal felony conviction for forged securities – the trial court determined that the matter was "a mandatory non-suspendable sentence pursuant to [McIntyre's] prior criminal history[.]" *Appellant's App*. at 15. The trial court sentenced McIntyre to eight years, with six years executed, serving five years in the Indiana Department of Correction and one year in the Hamilton County community corrections program, and the remaining two years suspended to probation. *Id*. at 8, 13-14. McIntyre now appeals.

## Discussion and Decision

[13] McIntyre claims the evidence was insufficient to convict him of forgery. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess witness credibility. *Diallo v. State*, 928 N.E.2d 250, 252

(Ind. Ct. App. 2010). Instead, we will consider only the probative evidence and reasonable inferences that may be drawn therefrom in support of the verdict. *Id.* We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Bocanegra v. State*, 969 N.E.2d 1026, 1028 (Ind. Ct. App. 2012), *trans. denied*.

[14] The State charged McIntyre, on or about November 6, 2014, with Class C felony forgery. *Appellant's App.* at 29. To convict McIntyre as charged, the State was required to prove that he, with intent to defraud, uttered the Note, in such a manner that it purported to have been made with Spencer's authority, when Spencer had not given such authority. Ind. Code § 35-43-5-2(b)(4) (forgery is committed when defendant with intent to defraud, makes, utters, or possesses written instrument such that instrument purported to have been made by authority of one who did not give authority). "Proof of intent to defraud requires a showing that the defendant demonstrated 'intent to deceive and thereby work a reliance and injury.'" *Bocanegra*, 969 N.E.2d at 1028 (quoting *Wendling v. State*, 465 N.E.2d 169, 170 (Ind. 1984)). Because intent is a mental state, the fact-finder often must "resort to the reasonable inferences based upon an examination of the surrounding circumstances to determine" whether—from the person's conduct and the natural consequences therefrom—there is a showing or inference of the requisite criminal intent. *Diallo*, 928 N.E.2d at 253. On appeal, McIntyre does not challenge that he uttered the Note in a manner purporting to have been made by the authority of Spencer when Spencer never

gave such authority. Rather, McIntyre's sufficiency claim is that the State's evidence failed to establish that (1) McIntyre had an intent to deceive when he uttered the Note and (2) Paul relied on the Note when he loaned the money.

[15]    In asserting that he had no intent to defraud, McIntyre maintains that Spencer's name appearing on the Note was an error. Other than the fact that McIntyre told Paul (and Guzman likewise told Spencer) that Spencer's name appearing on the Note was "a mistake," no other evidence was presented to explain why or how Spencer's name mistakenly appeared as a signatory on the Note. *Tr.* at 120. The evidence in the record is that McIntyre presented Paul with an investment opportunity with Indian Coffee Company, stating that the restaurant "is expanding" and that the funds would be used to purchase equipment, perform improvements, and expand seating and serving areas. *State's Ex.* 2. McIntyre's proposal to Paul was that Paul would receive $55,000.00 by July 3, 2014, on his $50,000.00 investment. The emailed offer expressly stated, "Let me know if you're interested and I will have the note drafted and signed for you," which reflects McIntyre's representation that a promissory note would be included in the "deal" if Paul was interested in participating. *Id.* Thereafter, a Note was prepared in accordance with the agreement, and McIntyre signed the Note as "Borrower." He also notarized the Note, stating that Spencer: (1) appeared before him; (2) affirmed the contents of the Note; and (3) signed it as a "Personal Guarantor." *State's Ex.* 1. However, Spencer did not sign the Note, did not authorize anyone else to sign his name on the Note, and, in fact, did not even know about the Note. The

Note was dated February 3, 2014, the day after McIntyre contacted Paul by email to offer the "great opportunity" to invest in Indian Coffee Company. *Id.* Spencer testified that, contrary to McIntyre's statements to Paul in the February 2, 2014 email, the majority of the $50,000.00 that Indian Coffee Company received was applied toward inventory, payroll, and daily operating expenses, not expansion. McIntyre's argument that he did not intend to defraud constitutes an invitation for us to reweigh the evidence in his favor, which we will not do. *Diallo*, 928 N.E.2d at 253.

[16] In making the argument that Paul did not rely on the Note, McIntyre highlights the fact that Paul did not receive the Note until February 18, 2014, which was fifteen days after Paul provided the check to The Dane Group. Because Paul did not receive the Note until after providing the money, McIntyre argues, "[Paul] relied upon the [February 2, 2014] email, not the [P]romissory [N]ote." *Appellant's Br.* at 14 (emphasis omitted). In support of his position, McIntyre points to the following exchange during defense counsel's cross-examination of Paul:

> Q: You then brought in a $50,000 check on behalf of Paul & Associates and dropped it off at The Dane Group?
>
> A: Yes.
>
> Q: And it wasn't until 15 days later that you received the promissory note?
>
> A: Yes.

Q: So you dropped off the $50,000 check in reliance on an e-mail, not the promissory note?

A: Yes.

*Tr.* at 126-27. However, we are unpersuaded that this isolated statement establishes that Paul did not rely on the Note. The referenced email specifically states that, if Paul was interested in the "deal" and chose to invest in Indian Coffee Company, then McIntyre assured Paul that he would "have the note drafted and signed" for him. *State's Ex.* 2. A Note was part of McIntyre's offer to which Paul agreed, and Paul loaned the money with the expectation that he would receive a Note to secure payment. Furthermore, Paul's testimony reflected that he "absolutely" relied on the existence of a personal guarantor, and Paul testified that if he had known that there was no guarantor in this case, he "would have demanded [his] money back earlier." *Tr.* at 125, 134. From this, it was reasonable for the jury to infer that Paul relied on the Note as part of his agreement to loan the funds to The Dane Group. Based on the record before us, we find that the State presented sufficient evidence from which the jury could infer beyond a reasonable doubt that McIntyre committed Class C felony forgery as charged.

[17] Affirmed.

[18] Riley, J., and Pyle, J., concur.